*1044 Dissenting Opinion.
Marr,-J.
Landry proceeded, via executiva, on two notes of "Victor,, secured by mortgage, aggregating in principal and interest about $2000; and the order of the judge was indorsed on the petition in the usual, form : “Let executory process issue, as herein prayed for, and according to law.” Yictor appealed from this order, and gave bond in the sum of $3000, with Francois Lacroix as his surety, conditioned for the-satisfaction of such judgment as might be rendered against him on the-appeal. This court rejected certain items of "cost and expense claimed, in the petition of Landry; and affirmed the order appealed from, theappellee paying the costs of appeal. Opinion Book 44, p. 54.
The sheriff proceeded with the writ of seizure and sale. The mortgaged property was sold for $1350; the costs, including attorney’s fees,, amounted to $208 28; the taxes, due for several years, aggregated $662 67; and there remained only $479 05 to be applied to the mortgage debt. Landry then brought suit on the two notes against Yictor, via ordinaria, to recover the balance, $1704 95, with interest and costs;, and judgment was rendered accordingly; on which execution was issued, and returned, “no property found.” He then took a rule on Lacroix,, the surety on the appeal bond in the executory proceedings, to' show-cause why execution should not issue against him. The rule was made-absolute ; and Lacroix took this appeal from the judgment condemning-him to pay the balance, $1704 95, with interest and costs.
The proceeding by seizure and sale is ex-parie, and anomalous. The-creditor exhibits to the judge, in term or in vacation, authentic evidence-of the debt, and of the mortgage by which it is secured; and prays-that the mortgaged property be seized and sold, and the proceeds applied to the payment of the mortgage debt. On this, the judge grants-the order, the usual form of which is: “ Let executory process issue as prayed for, and according to law.” No previous notice is given to thémortgagor; no citation is issued ; nor is any opportunity afforded to him to object to the granting of this order. The first notice he gets is by service of a copy of the order, and a demand of payment; and his-property will be advertised and sold, unless he appeals within ten days,, or obtains an injunction on opposition, .or by separate suit.
No personal judgment is asked for or rendered, and none .can be-rendered against the mortgagor. The proceeding is purely in rem> against the property mortgaged ; and. no other property can be seized, or sold under the order and writ. With the sale of the mortgaged property the proceeding is at an end, functus officio, and the return of the sheriff is the official proof that the mandate of the court, the order-of seizure and sale, the judgment, if that word be preferred, has beem *1045 obeyed and fully executed ti the proceeds'cío not suffice to pay the mortgage debt, no further proceeding can be taken in that suit; and the •creditor is compelled to bring a new suit, a suit in personam, against "the debtor, the mortgagor, in the ordinary form, to recover the balance, 3ust as he would proceed on any other ordinary unsecured debt.
It was doubted at one time whether the order of seizure and sale was such a judgment as entitled the mortgagor to appeal. The right of -appeal'was recognized in Day vs. Fristoe, 7 Mart. 239, and in Tilghman vs. Dias, 12 Mart. 691, and it waS conceded in subsequent cases without -serious question. Gurley vs. Croquet, 3 N. S. 498; McDonough vs. Fort, 14 La. 350. The nature and extent of this order were elaborately dis- • cussed in Harrod vs. Voorhies, in 16 La. 254; and the right of appeal con- ■ ceded ; and this was followed in Bank vs. McKee, 2 A. 461; Mathé vs. McCrystal, 11 A. 4; and Riley vs. Christie, 13 A. 256.
In Harrod vs. Voorhies the question was whether the order of •seizure and sale was a judgment in the sense that it prevented the running of prescription ón the note on which it was founded. It was -admitted as settled doctrine, and it is not to be questioned, that an • appeal lies from this order: and the court went on to say that when an authentic instrument importing confession of judgment is presented to the judge, with a petition praying for executory process, he must exam■•ine and decide whether it unites all the requisites of the law necessary to authorize this summary proceeding. ‘-'So far it is a judgment, and ■an appeal must lie from it, as from all other orders of court that might work irreparable injury. * * * * But such a decree is •not a judgment in the true and legal sense of the term, and possesses none of its features. It issues without citation to the adverse party; it decides on no issues made up between the parties ; nor does it adjudicate to the party obtaining it any right in addition to those secured 'by his notarial contract. If such an order was a real judgment, it would ‘be out of the power of the judge granting it to set it aside; after rendering this decree he would be divested of all jurisdiction, and it could be reversed only by means of an appeal, or a separate action of nullity : Whereas, it is every day’s practice for the judge issuing such orders to .-set them aside on a rule to show cause or on opposition ; and in most -cases the proceedings are turned into an ordinary suit,, in which final .'.judgment is afterward rendered. Such a decree, then, can be viewed only as giving the aid of the officers of justice to execute an obligation -which by law produces the effects of a judgment in relation to the par-ticular property mortgaged.” P. 256, 257 ; see, also, Chamblis vs. Atchison, 2 A. 490, 491.
And, again, p. 257: “ Plaintiff’s note and mortgage have not merged • ún the decree made on them, as they would have done in a contradictory *1046 judgment rendered by a competent court. If they were liable to prescription, surely the decree of the district judge granting executory process on them could not shield them from its operation.”
The proposition that this order is not a judgment in the true and legal sense of the term, and possesses none of its features, was repeated in the same language in Riley vs. Christie, 13 An. 256, where it was decided that it is not a “ judgment” in the sense of the Constitution, for which reasons must be specially adduced in the order itself. The doctrine that this order does not prevent the running of prescription was not questioned, so far as I am advised, until 1853, when in Rhea vs. Taylor, 8 An. 24, it was decided that service on the mortgagor of notice of seizure interrupts prescription.
This decision seems to rest upon the mere assumption that Harrod vs. Voorhies had been overruled in this .respect by Stanborough vs. McCall, 4 An. 324, and Fortier vs. Zimple, 6 An. 54. In Stanborough vs. McCall, the proceeding via executiva was suspended by injunction; and in Fortier vs. Zimple it was arrested by the opposition of the mortgagor : and, in both cases, the litigation was protracted by the action of the mortgagors. These circumstances distinguish these two cases ; and in any case so long as the hands of the mortgagee are tied, and the enforcement of his rights suspended and delayed by an injunction suit or an opposition, prescription can not run, upon the well-known maxim, contra non valentem. The court did not, in either of these cases,' question the correctness of the decision in Harrod vs. Voorhies ; and the decision in Rhea vs. Taylor is mere assertion, not supported by any principle stated by the court, nor by any previous decision. Citation interrupts! prescription, because the law has expressly so provided ; but the notice-of seizure served on a mortgagor is not a citation ; it has none of the features of a citation, and none of its effects ; and no law declares that it interrupts prescription.
In Rhea vs. Taylor the defendant, in answer to the suit in personam, to recover the balance not satisfied by the sale of the mortgaged property, specially admitted the execution of the notes, and pleaded an open account in compensation “of any amount that may be found due,” etc. After the suit had been pending some five years, he pleaded prescription. The plea in compensation was the assertion, the judicial admission, of mutual co-existing indebtedness; and it was not necessary to place the decision overruling*the plea of prescription on any other ground than that the first plea was an acknowledgment of indebtedness.
In Walker vs. Lee, 20 An. 192, the proceeding via executiva was-arrested by injunction. Subsequently, suit was brought inpersonam; and! defendant pleaded prescription. The court considered the ■ question settled by Stanborough vs. McCall, Fortier vs. Zimple, and Rhea vs. Taylor ; and the plea was overruled.
*1047 In Roupe vs. Carradine, 20 An. 244, the proceeding via executiva was; not enjoined; but the writ was returned by order of plaintiff’s attorney-The court lost sight of the fact that this was an abandonment of that-proceeding ; and, on the assumption that Walker vs. Lee, and the cases-there cited, had settled the question, overruled the plea of prescription-Properly understood, Harrod vs. Voorhies is not shaken by Stanborough vs. McCall, Fortier vs. Zimple, and Walker vs. Lee, in all of which plaintiffs-were stopped and delayed in the enforcement of their rights by the acts-of the defendants; and the maxim contra nonvalentem, was perfectly applicable : and in Rhea vs. Taylor and Roupe vs. Carradine the court evidently failed to observe the distinguishing characteristics of the earlier cases relied upon, that in all of them the proceeding via executiva was suspended by opposition and by injunction.
By act of 1846, p. 166, so much of articles 746, 747 of the' Code of Practice as authorized executory process on judgments obtained mother States and in foreign countries was repealed. In several cases orders had been granted making executory judgments rendered in other States which the parties were endeavoring to enforce when the act of 1846 was passed. This court held that the repeal of the law put an end to the proceeding via executiva; and that the j udgment creditors must sue upon their judgments via ordinaria. There could not have been a more authoritative recognition and enforcement of the doctrine laid down in Harrod vs. Voorhies and Riley vs. Christie, that the order of seizure and sale is not a judgment in the true and legal sense of the term; and that it is merely giving the aid of the officers of justice to enforce a judgment obtained elsewhere, or a contract to which the law attributes the effect of a judgment with respect only to the-property specially mortgaged. If the order making a judgment executory had been itself a judgment,-it would have created a vested right in the plaintiff; it would have been his property from the moment it was granted ; and by the Constitution of the United States and the constitution of Louisiana it could not have been annulled by any subsequent action of the Legislature. It was only because this order was merely a mode of proceeding, and was neither a judgment nor a contract, that it was subject to legislative control and repeal. C. P. art. 548; Scott vs. Duke, 3 An. 253; Kilgore vs. Bank, 3 An. 693; Bank vs. Markham, 3 An. 699.
It will be observed that, while the Codes attribute to the contract upon which executory process is granted the effect of a confession of judgment, in so far as the mortgaged property is concerned, the order of seizure and sale is not called a judgment. In the Civil Code, 1808 p. 460, art. 40,1825, art. 3361, it is called “ an order for the immediate seizure ” of the thing mortgaged. In the Code of Practice it is called “an order”: arts. 66, 735, 736, 738, 742. The use of the word judgment seems to have *1048 been studiously, avoided in art; 788, where “the debtor'against whom this order of seizure and sale has been rendered,’.’ is authorized to have the sale suspended by injunction; and in article 742, where, oh proof of the grounds alleged in the opposition,, the judge is required to r,evoke-the order of seizure and sale.” -It is usual to speak of a judgment as> having been rendered ; and the invariable use in the Codes of the word. order shows that the compilers designed that this flat of the judge, should be an order merely, and not a judgment in the sense of the law.. Article 510 of the O. P. plainly declares that orders of court, “ such as mandates of arrest and of seizure,” are not termed judgments, though, they have the same effect; that is, they must be obeyed and enforced, unless they are set aside or revoked. A judge has no power to revoke a judgment. Once rendered, it is the property of the party in whose favor it has been given ; and the judge can not alter it, except on new trial, or to change the phraseology, or to correct some error of calculation, or some clerical error; O. P. arts. 547, 548. In an action of nullity ho may decree it to be void, and may enjoin it perpetually; or he may rescind it at the suit of a minor or absent defendant. O. P. arts. 556, 614, 615. The order of seizure and sale, therefore, is not a judgment in the legal acceptation of the word, since the law so declares in art. 540 of the C. P.,, and the judge who granted it is required to revoke it on proper proof.;, art. 742 ; and because the Codes call it an order, and never speak of it as a judgment.
There are important distinctions between the order of seizure and sale, granted on an act importing confession of judgment, and the order making executory the judgment of a different tribunal. • In the one case the order and writ require, the sale of the mortgaged property alone ; in the other a common writ of fieri facias issues, and may be levied on movables and immovables, rights and credits of the debtor. In the one the sale may be suspended by injunction, on opposition without security; while in the other the judgment debtor can not obtain an injunction Without bond and security, as in other injunction suits, O. P. art. 750.
When the word “judgment” is used in. the Code of Practice, it means the decision of the j udge in a contradictory proceeding; and it does not include in that term orders of seizure or of arrest, or other mandates which courts may grant. Judgments require the party con- . demned to do some thing or to pay some thing; the order of seizure and sale does not require the mortgagor to do any thing or to pay any thing, not even costs ; it is granted on the ex-parle application of the mortgagee, without an opportunity having been afforded to the mortgagor to be heard ; and he knows nothing of the proceeding until he is informed, by subsequent notice, that an order has.been granted, under which his property is about to be seized and sold: and he must seek relief, either *1049 by opposition, in the nature of an answer to the demarid, or by separate: suit and injunction.’ Judgments are rendered-after the parties' have-been. heard, or have had thé opportunity to be heard ;• the' mortgagor is heard only after the order condemning his property tó be Sold has' been ■granted ; and then he can only proceed by injunction or by appeal!
This proceeding, via executive, was in use under the dominion-of the Spanish -law; and it prevailed in Erando to enforce contracts,' Actes> or Tubes, “emportant execution paree.” Merlin, vo. Execution Paree, tells us that this term was applied to the execution “ qui peut se' faire■en vertu de Pacte tel qu’il est,’ sans avoir besoin cVautre formalité nid’autre litre, le mot paree n’est,- comme l’en voit, que la traduction de Pexpróssion Latine, parata; et le seüs en est qúe tel acte est pret á rece-' voir son execution.”
In the Code of 1808, p; 460, art. 40, and of 1825, art. 3361, the phraseology of the French law is adopted; and the words of the French text are “emporte execution paree,” which, in the English version are,■“amounts to a confession of judgment.” There is no word in the French text which can be translated either judgment or confession; and there are no three words in the English language which can express the meaning of the three French words, “ emporte execution paree.” Thezeason of this is obvious. No English speaking people have any analogous proceeding, nor does the English system attach sufficient import-' anee to any contract whatever, to permit execution to issue upon it under which the property, which is the subject of the contract, may be seized and sold, without a previous contradictory judgment or decree.Of course, no people would have or require words to express a thiDg of ■which they have no knowledge.
The compilers of the Code of Practice adopted the same phraseology in describing acts upon which the order of seizure and sale may be granted. Article sixty-three declares that th'o creditor who has-against his debtor “ un tilre emportant execution paree,” shall be'entitled -to have the hypothecated property seized immediately and sold. The English translation is “ a title importing a confession of judgment.” In ■article sixty-six the phrase is varied in the French; “porte execution par&e,” which is also translated “imports a confession of judgment;” and in article ninety-eight' the -.expression: in the original text is, “un tilre ■emportant execution paree,” -which is translated in the English text, “ an act or title importing-confession of judgment.” - - ■■•
Article 732 usesthe words “ acie emportant Vexecution parÓe,’’- 'which• is translated “ an act importing a confession of judgment.” ' Conscious of the fact that there was no English equivalent for these French words, the compilers have expressed their meaning paraphrastically, in -article 733 :> “An act is said to import a confession of judgment in matters of privi *1050 lege and mortgage, when it is passed before a notary public, or other officer fulfilling the same functions, in the presence of two witnesses, and the debtor has declared or acknowledged the debt for which he gives the privilege or mortgage.”
Every promissory note is a declaration and acknowledgment of a debt; and the fact that the maker adds to this acknowledgment a formal contract by which he grants a mortgage or a privilege to secure the debt no more makes that contract a confession of judgment in any just sense of the words than would a similar acknowledgment in a contract which grants no mortgage or privilege. To give additional facility to the enforcement of mortgages and privileges, the law-maker has seen fit to allow the mortgage creditor to seize and sell the mortgaged property, without the delay of obtaining a contradictory judgment; but it has not chosen to elevate the contract to the dignity of a judgment, or to give it the effect of a judgment, except in so far as execution of the contract, by the sale of the mortgaged property, is concerned. Where there is a confession of judgment, the creditor may obtain, upon exhibiting it, a real judgment, which may be enforced by the seizure and sale, not merely of the property specially mortgaged to secure it, but of any other property of the debtor subject to execution.
The paucity of the English language does not admit of a translation of the original French of our Codes, “ emporte execution paree;” and the compilers have,sufficiently shown what they meant by the mistranslation “ imports a confession of judgment,” by limiting it to contracts clothed with certain prescribed formalities, and restricting its effects to the property specially designated and affected.
There are other considerations not less conclusive. Death puts an end to the capacity to stand in judgment; and that which belonged to a man up to the moment of his death passes, eo instanti, into the ownership and dominion of another. But the death of the mortgagor is no obstacle to the granting of the order, and to the seizure and sale of the mortgaged property. No judgment can be rendered against the executor or administrator of a succession, except for the purpose of liquidating a debt which he does not acknowledge; and that judgment is always guarded with the qualification that it be paid in due course of administration; and it can not be enforced by execution. But, although the mortgagor be dead, and the mortgaged property be inventoried as belonging to the succession, and the succession be in regular course of administration, the mortgagee may go into a court of ordinary jurisdiction, and obtain the order of seizure and sale, and have the mortgaged property sold by the- sheriff, in accordance with the terms and conditions of the notarial contract of mortgage. It necessarily follows, therefore, that the order of seizure and sale is not a judgment; it is an ex- *1051 parte order; and it is executed by the sale of the mortgaged property, whether the mortgagor be living or be dead.
Having thus ascertained the nature, extent, and effect of the order of seizure and sale, and the restricted sense in which alone it can be treated as a judgment, it remains to inquire what are the obligations assumed by the surety in the bond given for an appeal from that order.
The condition of the bond is that prescribed by the Code of Practice, art. 579, that the appellant shall prosecute his appeal, and “shall satisfy whatever judgment may be rendered against him, or that the same shall be satisfied by the proceeds of the sale of his estate, real or personal, if he be cast in the appeal; otherwise, that the surety shall be liable in his place.”
The Code of Practice, article 575, requires that the bond for a suspensive appeal shall be for a sum exceeding by one half the amount of the judgment appealed from, when it is for a specific sum. If the judgment be not for a specific sum, bnt for the delivery of some movable of a perishable nature, the bond must be for an amount exceeding by one half the estimated value of such movable. Art. 576. If the judgment decree the delivery of real estate not of a perishable character, the bond must be for a sum exceeding by one half the estimative value of the revenue to be derived from the property pending the suit; and for such additional sum as the judge may determine as security for any injury or deterioration which may be caused to the property by the appellant while it remains in his possession. Art. 577.
If the actual owner of real estate sue one wrongfully in possession, and obtain judgment decreeing him to be the owner, and to be entitled to immediate possession, no judge would think of requiring the defendant to give bond for the value of the property, much less for a sum exceeding that value by one half, in order to appeal suspensively. In all such cases the bond must be fixed in accordance with the requirements of article 577. Is it possible to suggest any good reason for requiring the mortgagor, appealing from an order of seizure and sale, to give bond for a larger amount than would be required of him if he were defendant in a petitory action, appealing from a judgment decreeing the ownership and right of possession of that same property to be in the plaintiff? The mortgage does not give the mortgagee any title of ownership, nor right of possessiota, nor does the order of seizure and sale. The mortgage creates a lien, a right to be paid out of the proceeds of the sale of the mortgaged property; and the order simply requires the property to be sold, and the contract right of the mortgagee to be enforced. Why should the mortgagee, proceeding in the most expeditious manner known to the law, having the right to a summary trial, as well in the district court as in the appellate court, in the event of *1052 ■opposition by the mortgagor, be secured by a bond for a larger amount than the real owner could require, who is delayed, and -who-must await the slow movement of regular proceedings in order to obtain possession, ■and enjoyment of liis property, wrongfully'withheld by the appellant? '
It is immaterial what the amount of the bond may be, except in ad far as the enjoyment of-the right of appeal may be improperly ób-' structed by requiring an unreasonable bond, and'that the liability of the surety can not exceed the ambunt fixed. The precise obligation, is to satisfy such judgment as may be rendered by the appellate court against the appellant, on the appeal. As was well said in Wilson vs. Churchman, 6 A. 469: “We know of no instance in which sureties on art appeal bond have been held liable, except on the judgment of the court of the appeal; ” and by the very terms of the appeal bond, as prescribed toy the Code of Practice, art. 579, the satisfaction of the judgment ren-' dered by the appellate court discharges the obligation of the'surety.
Wilson vs. Churchman is an instructive case. Plaintiffs had sold a. lot of flour to Churchman, which was put on board a ship, consigned to' parties in Philadelphia.' After the bill of lading had been sent by mail -to the consignees, plaintiffs sued for the price and sequestered the flour' ■on the ship, under their lién as vendors. Gilchrist, as master and part owner of the ship, bonded the flour, and the ship transported and delivered it as consigned. Gilchrist intervened by way.of third opposition, •alleging his obligation to deliver the flour, in accordance with the bill of lading, and his right to the custody and possession of it for that purpose. The judgment" of the district court, on rule, maintained the ■sequestration; and, on the merits, the opposition of Gilchrist was dismissed. He appealed; and this court reversed the judgment on the rule, and set aside the sequestration, and affirmed the judgment dismissing the opposition. The ease was remanded “for the sole purpose of ascertaining the value of the flour sequestered at the date ■of the bonding by Gilchrist, and of rendering judgment against him for that value, subject to credit for such payments as may have been made toy Churchman.” 4 A. 456.
Judgment was rendered in the district court against Gilchrist for $3500; and, on a return of “no property'found,” the sureties on the appeal bond on the first appeal were condemned to pay the' amount; and they appealed. This court held that they were nbt liable. After the language first quoted above, the court said :
“Tne Code of Practice, article 575, evidently iooks to the responsibility attaching in a definitive judgment on the appeal, and seems'to us to exclude the idea'of the surety binding himself to abide by the action of any court other than that of the court to which the appeal is taken. The same sense, we think, prevails in article 579.” -6 A. 469.
*1053 Greiner brought suit against Prendergast to annul a judgment (Obtained against him by Prendergast, and he enjoined the execution of that judgment. The injunction was dissolved with $27 damages, ten per cent interest on the judgment, and costs. Greiner took a suspensive appeal; and gave bond with Durell- as his surety, conditioned as the bond is in this case. The j udgment appealed from was affirmed; and on rule, Durell, the surety, was condemned to pay $500, the amount ■of the appeal bond, “to be discharged on payment-of-$271, with interest and costs, the amount of the original judgment in favor of Prendergast, against Greiner, together with the $27 damages, and the ten per cent interest decreed on the dissolution of the injunction.’’ On the appeal taken from this judgment, this court decided that Durell-had bound himself for the payment of the $27, ten per cent interest, ■ and costs of the action of nullity, “ and nothing more. To hold him to the payment of the original judgment would be to hold him beyond' the terms of his bond, xohicli can not he done.” 3 An. 389.
Lewis, a slave, brought suit for his freedom against Cartwright, who claimed to be his owner ; and he appealed suspensively from the judgment decreeing him to be a slave, and the property of Cartwright. The condition of the bond was identical with that in this case; and the judgment appealed from was.affirmed.. The slave was at large from 1841 until 1846, when he was arrested and delivered to Cartwright, from whom he afterward escaped. Suit was brought by Cartwright on the appeal bond against the sureties, to recover for the loss of the services ■of the slave from 1841 to 1846, This court said the obligation of the sureties was that the judgment which might be rendered on the.appeal should be satisfied, and nothing more. , ■ ' -
“Satisfaction of the judgment involved two things: 1. That the slave should surrender himself to his master as his slave.. 2. That the costs of the suit should be paid. The judgment merely ascertained a question of property; it did not determine what damages the owner had incidentally incurred by the litigation carried on against him by his slave. * * * * * The sureties in such an appeal, upon ■a bond expressed as the present bond, would be considered as satisfying their bond by delivering the slave and paying the costs.” The judgment discharging the sureties was affirmed. 3 A. 685.
In the State vs. Judge of the Third District, 18 La. 444, the mortgagor arrested the sale, on opposition, under articles 739, 740 of the <!ode of Practice, without giving security. The injunction was dissolved, but the court ordered it to be reinstated on the mortgagor giving bond in the sum of $13,500. He demanded a suspensive appeal, which was granted on condition of his giving bond in the sum of $13,500; and he applied for a mandamus to compel the judge to grant him the appeal on *1054 his giving bond to cover the costs. The case was one of first impression; and the court held that, although the mortgagor may be entitled to an injunction without giving bond, he can not take a suspensive appeal from the judgment dissolving that injunction without giving security as required by article 575 of the Code of Practice.
This decision is not reconcilable with the reasoning and decree in the subsequent case of the State vs. Judge of the First District, 19 La. 169, 171. Where an injunction is dissolved, without damages, a bond for costs only suffices for a suspensive appeal; Malain vs. Judge of Third Judicial District Court, 29 An. 794; and it logically follows that this rule is applicable as well to injunctions obtained without as to those granted with bond and security. The principle is that the judgment appealed from does not condemn the plaintiff to do any thing or to pay any thing; and he is, therefore, entitled to appeal on giving bond to cover the costs. This court well said in Parham vs. Cobb, 9 An. 426: “ The term suspensive appeal, as used in the Code of Practice, has no meaning, except as applied to a judgment rendered against the defendant in a suit.” Of course this is to be understood to apply to the party condemned; and the defendant in the judgment may be the plaintiff in injunction, or in a reconventional demand, etc. The false application of this term has misled the judicial tribunals of this State on more occasions than one, and notably in 18 La. 444. See the rule as stated in Blanchin vs. Fashion, 10 An. 345, and Untereiner vs. Miller, 29 An. 436, in accordance with Parham vs. Cobb, 9 An. 426.
In State vs. Judge of the Seventh District Court, 22 An. 35, it is said that a judgment in rem may be for a sum as specific as a personal judgment. “ To suspend the execution of a judgment for a specific amount, whether it be an order of seizure and sale, or an ordinary judgment, the appeal bond must conform to article 575 of the Code of Practice; ” and Tournillon vs. Ratliff, 20 An. 179, is relied upon as the authority for this assertion. But in that case the court decided nothing more than that a bond exceeding by one half the mortgage debt actually due sufficed to suspend the execution of the order of seizure and sale, although the whole mortgage debt was for a larger amount; and that the amount not due could not be taken into consideration. “Its payment was suspended by the terms agreed upon, without any bond.” P. 180.
The case in 22 An. 35, therefore, is without support. If it be conceded that a judgment in rem maybe for a sum as specific as a personal judgment, it certainly is not true that an order of seizure and sale, “ Let executory process issue as prayed for, and according to law,” is a judgment for any sum whatever. Who could know in advance what the mortgaged property would sell for?
In Wood vs. Fulton, 2 Harris & Gill (Md.), 75, which was an action *1055 on an appeal bond against the surety, on a decree foreclosing a mortgage, the court held that the decree appealed from was in rem, and that the measure of damages was the actual injury suffered by the appellee from the delay.-
In the present ease the obligation of the surety is dependent on two conditions; 1. That, on the appeal, the appellate court should render a judgment against the appellant. 2. That the appellant should fail to satisfy that judgment.
The appellate court could only review the matters passed upon by the district court. The district court merely ordered the mortgaged 'property to be seized-and- sold. The appellate court could onlyihquire whether sufficient authentic evidence had been presented to the district court to authorize that order. It might have found the evidence insufficient, and reversed the order; or it might have found part of the demand of the mortgagee not established by authentic evidence, and have affirmed the order deducting the amount not so established; or it might simply have affirmed the order appealed from. The court might have rendered a judgment against appellant for the costs, and, also, for damages for a frivolous appeal; and this would have been a judgment against the appellant for which the surety would have been bound by the terms of the bond. The court actually rendered no judgment against the appellant in this case, and it could not have rendered any judgment against him fqr the mortgage debt, because-the proceeding in the district court was not against him, but was in rem, against his property. The appeal was not frivolous, but was so well founded that the appellate court reduced the demand of the mortgagee, the appellee, and condemned him to pay the costs of the appeal.
If the appellee was subjected to delay, it was by his own fault, because he demanded more than was legally due to him; and the mortgagor was entitled to seek relief, as he did, by appeal. The delay was not great; the appeal was taken in February, and the decree of the appellate court was rendered in December, 1874; and the mortgaged property was sold in January, 1875. Nearly half the price of the adjudication was consumed by the taxes, which had accumulated from 1870, and-which primed the mortgage debt. The presumption is that the property sold for its full value; and it is not alleged in the rule, nor was it proven, that it would have brought more at any time between the date of the-order, third February, 1874, and the date of the sale, thirtieth January,-1875.
As the obligation of the surety is to pay and satisfy such judgment as may be rendered against the appellant by the appellate court, on the' appeal, he can not be held liable for damages for the delay caused to the mortgagee by the appeal; and it would be manifestly unjust in this case *1056 to make him liable for any consequence of the delay, because it was by the fault of the mortgagee in demanding what he had no right to recover, that the appellant'was compelled to seek the relief which he obtained by the appeal.
No case is cited, nor do we know of any, in which proceedings were taken to hold the surety liable on a bond given on appeal from the order of seizure and sale, prior to 1875. In Whan vs. Irwin, 27 An. 706, the mortgaged property had been sold, and a balance of .the mortgage-debt remained unpaid. A rule was taken on the surety in the appeal bond;, and our predecessors decided without dissent that as there was no personal judgment against the appellant, the mortgagor, no execution could issue against him, and the surety could not be held liable. A rehearing was granted; and the court, by a bare majority, three to two, decided that, after exhausting the mortgaged property, the mortgagor might proceed at once against the surety in the appeal bond. In support of this the cages in 20 An. 179, and 22 An. 35, are cited, both of which relate exclusively to the amount of the bond to be given on an appeal by the mortgagor from the order of seizure and sale; and neither of them refers in any manner to the extent of the liability of the surety.
Whan vs. Irwin ignores the jurisprudence of half a century, and the express terms of the Code of Practice, that this ex-parte order of court is not a judgment, in the true and legal sense of the term; and it can not be accepted as a correct statement of the law. In the subsequent case of Gaines vs. White, 28 An. 532, there was a personal judgment for a large sum with recognition of the mortgagee’s rights; and that judgment was appealed from.
Neither the mortgagor nor his surety guaranteed the sufficiency of the mortgaged property to pay the mortgage debt, as the Supreme Court of Maryland well said in 2 Harris & Gill, 75. The specific obligation was to satisfy such judgment as might be rendered against the appellant on the appeal. No judgment was rendered against him. The order of seizure and sale, to the extent that it can be called a judgment, is a judgment purely in rem; and the decree of the Supreme Court simply affirmed that order. If it can be said that the appellant and the surety bound themselves that that order or judgment should be satisfied, it was satisfied by the sale of the mortgaged property. When the mortgaged property had been sold, the order of seizure and sale was satisfied; and the proceeding in that suit was at an end. To say that the surety bound himself that the entire mortgage debt should be paid, is to make a contract for him to which he never consented. The order of seizure and sale did not condemn the mortgagor to pay any sum, much less to pay the mortgage debt. It merely ordered the mortgaged property to be sold, whatever it might yield; and the affirmance of that *1057 order did not condemn the mortgagor to pay any thing. The proof of this is that no proceeding could be taken on the suit via executiva to recover of the mortgagor the balance remaining unpaid after the sale of the mortgaged property.
It is elementary that the obligation of the surety can not be extended beyond that of the principal. Gilbert vs. Meriam, 2 An. 162; R. C. C. 3087. The surety in this case was not bound except by the appeal bond ; and there is nothing in that bond which binds the principal to pay the mortgage debt. By what process of reasoning can it be shown that the surety, binding himself specifically that a judgment to be rendered shall be satisfied, is liable for another and a wholly different judgment, rendered in another and a wholly different suit ? On the affirmance by the appellate court of the order of seizure and sale, neither before nor after the mortgaged property has been sold and exhausted can any writ issue against the mortgagor on that order. How can his surety be held under the more onerous condition that, on sale, judgment and execution may be obtained against him to which the principal is not liable?
In Cartwright’s case, 3 An., the satisfaction of the judgment appealed from was the delivery of the property to the owner; that is, the performance of the decree. In this case, the satisfaction of the order bf seizure and sale was the sale of the mortgaged property. In Wilson vs. Churchman, the liability of the defendant was fixed by the judgment appealed from; and the cause was remanded only to ascertain the precise amount of that liability. But when that liability was ascertained the judgment was not that rendered by the appellate court on the appeal; and the sureties were not bound, because they were liable only for such judgment as might be rendered by the appellate court on the appeal, not for a judgment to be rendered in subsequent proceedings in another court. In this ease it can not be pretended that the surety on the appeal bond was liable for the entire mortgage debt. It was necessary first to sell the mortgaged property; and a new suit was then brought to enforce the personal liability for the balance.
The proceeding via executiva related solely to the liability of the mortgaged property, and in no way affected the personal liability of the mortgagor. The surety undertook to satisfy such judgment as might be rendered against the mortgagor in that suit, which could have been only for costs and damages; and he did not in any manner undertake to be liable for another judgment, in another suit against the mortgagor.
It is manifest that the idea of the liability of the surety in such a case, for the balance not satisfied by the sale of the mortgaged property, grew out of the demonstrated error in 18 La. in fixing the amount of an appeal bond on the dissolution of an injunction ; and this was followed by the demonstrated error in 22 An. in calling an order of seizure and *1058 salea judgment íor a specific sum, and requiring an appeal bond in such, case to be in accordance with art. 575 of the Code of Practice. It seems to me contrary to right and justice that a surety in such a bond should be held as guarantor of the sufficiency of the mortgaged property; and that the mortgagee, after he has obtained the full benefit of the security which he accepted in the contract of mortgage, should be allowed to recover of the surety in the appeal bond, as if he had been guarantor of the sufficiency of the property, and surety, originally, for the debt secured by the mortgage.
There is proof on the record tending to show that plaintiff paid part of the city taxes at fifty cents on the dollar, which are deducted in full from the price of the adjudication. If the surety could be held liable, he ought to have the benefit of this discount; and the case should be remanded to ascertain the amount.
The proceeding by attachment differs from that by executory process in many particulars; and the Oode of Practice, art. 732, declares that they are subject to different rules, and must not be confounded. In a suit by attachment the proceeding is, in form, in personam. An action is brought to recover a debt, a specific, fixed amount; and the property of the debtor is attached for the purpose of bringing him into court; and to secure the payment of the judgment that may be rendered. If the debtor is absent an I is not cited, a curator acl hoc or advocate is appointed to represent him, and is cited in his stead. A judgment is rendered against the defendant, with lien and privilege on the propertyattacheL That judgment is for a specific sum ; and if the curator or the defendant should appeal suspensively, the bond would be fixed in accordance with art. 575 of the C. P.; and the surety would know and understand that he was bound for the debt if it was not made out of the debtor or his property, in the event of the affirmance of the judgment by the appellate court. The form of the proceeding is in personam; but where the defendant is not cited, and does not make personal appearance, the proceeding is in rem, in the sense that it concludes the defendant only with respect to the property attached; and no other property of the debtor could be seized and sold under that j udgment.
It will he time enough when the case arises to inquire what would be the liability of the surety in an appeal bond in an attachment suit where the defendant has not been cited and has not appeared per'sonaily and the value of the property attached is less than the amount of the judgment. Reference has been made to this proceeding nowand this digression made only because it has been suggested that the proceeding by attachment and by seizure and sale are subject to the same rules. The Code of Practice declares that they are not; and, it may be *1059 added, there is not much probability that a curator ad hoc would be able to give the bond lor a suspensive appeal in an attachment suit without the consent and assistance of the defendant, and such action on his part as would bind him personally by such judgment as might be rendered on the appeal by the appellate court, by which his surety would also be bound.
It may be that the proceeding by seizure and sale interrupts prescription; but the argument and decision to the contrary in Harrod vs. Voorhies has never been met or answered. It may be that where the mortgagor, having obtained an injunction on opposition, can appeal from the judgment dissolving that injunction only by giving bond for an amount exceeding by one half the mortgage debt, as decided in 18 La. 444; though this would be in violation of the general rule that plaintiff in injunction, and the party who is not condemned to do any thing, or to pay any thing, may appeal on giving bond for the costs only; and it may be, as asserted in 22 An. 35, that to appeal suspensively from an order of seizure and sale, the mortgagor must give bond for one half over the amount of the mortgage debt, contrary to all the analogies of the law in kindred cases. It would not thence follow that the surety in such a bond was liable for the mortgage debt, or for the amount of a judgment rendered in another suit, for the remainder not paid by the sale of the mortgaged property. His obligation is specific to pay and satisfy such judgment as may be rendered “ against the appellant,” on the appeal; and it can not be extended beyond the express terms of the bond. A judgment for the remainder, a j udgment in another suit, is not the j udgment appealed from, nor is it the judgment rendered, against the appellant by the appellate court on the appeal. Until such a judgment has been rendered and has not been satisfied the surety is not in default: his conditional obligation has not become absolute, and he is not liable.
Whan vs. Irvin is the only ease of which I have any knowledge in which the surety in an appeal bond has been held for a judgment rendered by another court than that of the appeal; and in another and wholly different proceeding. In my judgment that decision and the one now rendered in this case impose upon the surety an obligation to which he has never assented. The contract of suretyship is strictisshna juris: Whenever resort is had to the surety, he may well ask: “ Is it so nominated in the bond?” And if it is not, he may truly say: “Non in Ucee faldera veni.” Instead of construing the obligation of the surety strictly, Whan vs. Irvin construed it liberally against the surety, and in favor of the obligee. In Whan vs. Irvin, a contract was made for the surety and enforced against him, instead of the contract which he actually assented to and made.
Wilson vs. Churchman, 6 An., was a well considered case, by a court *1060 which we all remember with pride as one of the ablest that has ever graced the Bench. That decision commends itself to my judgment and approval, and I am not prepared to overrule it.
Dissenting, as it is my misfortune to do in this case, from all my brethren, due respect for them and myself has compelled me to state at large, as I have done, the reason by which I am controlled.